**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| SABRINA SEXTON | : | |
| Plaintiff, | : | |
| | | Case No. 3:08CV00055 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.     INTRODUCTION

A previous recipient of Social Security disability benefits, Plaintiff Sabrina Sexton

ceased to receive disability payments when she voluntarily returned to work after her

condition improved.  In April 2003, however, Plaintiff again sought financial assistance

from the Social Security Administration, claiming that she was under a disability due to

numerous health problems, including heart attack, chronic obstructive pulmonary disease

["COPD"], high blood pressure and right ankle problems.  (Tr. 67, 159, 180).  These

problems allegedly stopped Plaintiff from working as of February 15, 2003.  (Tr. 160).

After various administrative proceedings, Administrative Law Judge ["ALJ"]

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

Melvin A. Padilla denied Plaintiff's Disability Insurance Benefits ["DIB"] and Supplemental Security Income ["SSI"] applications based on his conclusion that Plaintiff's health problems did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 82). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply to Defendant's Memorandum in Opposition (Doc. #11), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the final administrative decision denying her DIB and SSI applications or, at a minimum, a remand of this case to the Social Security Administration to correct certain alleged errors. The Commissioner seeks an Order affirming the administrative denial of Plaintiff's DIB and SSI applications.

## II.     BACKGROUND

At the time of the ALJ's decision, Plaintiff's age [47] placed her in the category of a "younger person" for purposes of resolving her DIB and SSI applications. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c); (*see also* Tr. 81). Plaintiff has an eleventh grade or "limited" education, *see* 20 C.F.R. §§ 404.1564, 416.964, as well as vocational training as a medical assistant (Tr. 164). She has worked primarily in retail management.

(Tr. 160).

During the administrative hearing held by ALJ Padilla, Plaintiff testified that she stopped working as a department head at Kroger's on February 14, 2003. (Tr. 95). She said that she held that job for six months and had not attempted to work anywhere else since that time. She testified she could not work due to two heart attacks (on the same day) in 1996 and a later automobile accident. *Id.* She testified that she had another heart attack on February 15, 2003. (Tr. 100). She said that her symptoms include hypertension and difficulty breathing. (Tr. 95). Plaintiff testified that she experiences difficulty every day and that she uses inhalers. She said that continues to smoke but has been trying to quit, reducing her intake from three packs to seven cigarettes a day. (Tr. 108).

Plaintiff also testified to problems with swelling and severe pain in her ankles, especially if she walks. (Tr. 96-97). She said that she was not receiving treatment for her ankle problem but previously had undergone physical therapy. (Tr. 97-98).

Plaintiff testified that she experiences chest pain, especially when becoming excited or upset. (Tr. 99). She said that she recently has experienced this pain two or three times per week and treats it with nitroglycerin. (Tr. 99).

Plaintiff also testified concerning her activities of daily living. She has a driver's license and drives two or three times per month. (Tr. 94). She sleeps about two and a half hours during the night and one to one and a half hours during the day. (Tr. 102). She can walk for about 10 minutes before needing to take a break. (Tr. 109). She said that she can sit for about one hour, after which she must get up and move about before

resuming sitting.  Plaintiff said that she can lift no more than four pounds.  (Tr. 103).  She can brush her hair, dress herself, load the dishwasher, do laundry, make her bed, go shopping with her husband, go out to eat, and visit her parents.  (Tr. 102-04).  Climbing stairs causes her to become short of breath and to experience pain in her ankles.  (Tr. 103).  Plaintiff said that she does not sweep, mop, or wash dishes.  (Tr. 104).  Plaintiff said that she does not go out to movies but does watch television and read.  (Tr. 104-05).  She said that she had gone on a three-day honeymoon with her husband in March 2005 to Lake Erie.  (Tr. 105-06).

In addition to Plaintiff's testimony, the administrative record contains Plaintiff's medical records.  The administrative law judge's decision fairly sets out the relevant medical evidence of record, but some highlights of the medical opinions will help frame further review.

Plaintiff relies on the opinions of her treating board-certified cardiologist, Salim O. Dahdah, M.D.  Plaintiff began treating with Dr. Dahdah on February 22, 1996 (Tr. 359), and resumed treatment in 2005.

Dr. Dahdah opined in March and October 2004 that Plaintiff would be "unable to return to work on a permanent basis" because of a recent angioplasty, coronary artery disease, hypertension, hyperlipidemia, COPD, status post myocardial infarction, status post numerous coronary interventions, and her deteriorating cardiac condition.  (Tr. 359, 370).

In April 2005, Dr. Dahdah concluded that, in view of Plaintiff's continuing

episodes of chest pain, shortness of breath and increased fatigue, as well as her significant history of coronary artery disease, her continuing symptoms and her respiratory disease, she was unable to work on a permanent basis. (Tr. 342). He further noted ECG results in June 2004 showing left ventricular dysfunction, stress testing in December 2004 showing anterior and apical wall ischemia, and a history of COPD.

On May 14, 2005, Dr. Dahdah prepared a functional capacity assessment report. (Tr. 398-400). Dr. Dahdah opined that Plaintiff in a work atmosphere can stand only for a total of one hour and 10 minutes at a time, walk for a total of 35 minutes at one time, and sit for a total of one hour and 15 minutes at one time. *Id.* Plaintiff cannot lift any weight in a work atmosphere, due to palpitations, fluttering and dizziness. *Id.* Plaintiff cannot use her hands repetitively for simple grasping, pushing and pulling, or fine manipulation, and due to arthritis, cannot use her feet for repetitive movements. *Id.* Plaintiff also is unable to bend, squat, crawl, climb steps or ladders, or reach above shoulder level. *Id.* Dr. Dahdah concluded that Plaintiff's cardiac condition and poor tolerance to activity will cause her cardiac status to progressively worsen. *Id.*

Plaintiff further relies on the opinion of Fred A. Wagshul, M.D., a pulmonary specialist with whom she treated in the mid-1990s and beginning again in September 2005. (Tr. 452). Dr. Wagshul opined in November 2005 that Plaintiff then could stand, walk and sit for less than one hour each in an eight hour work day, could not do any lifting, and was unable to bend, squat, crawl, climb steps or ladders, or reach above shoulder level. (Tr. 449-50). Based on pulmonary function testing in October 2005, Dr.

Wagshul also indicated that Plaintiff has severe obstructive lung disease with recurrent and chronic bronchitis. Dr. Wagshul stated that she was on medication, and was "clearly disabled and not allowed to return to work from both a pulmonary point of view and what I believe is a cardiac point of view with Dr. Dahdah." (Tr. 451).

The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff was not disabled because she could perform a significant number of jobs in the economy. The Commissioner argues the ALJ's residual functional capacity finding essentially was consistent with the opinion of Nick C. Albert, M.D., a family practitioner who reviewed the file in November 2003. (Doc #10 at 8; *see also* Tr. 274-83). Dr. Albert stated a primary diagnosis of status/post MI [myocardial infarction], coronary artery disease, and status/post angioplasty and stenting times two; a secondary diagnosis of non-anginal chest pain, tobacco abuse, shortness of breath and hyperlipidemia; and other alleged impairments of status/post bilateral ankle fractures with open reduction and internal fixation, and left ankle fusion. Dr. Albert opined in November 2003 that Plaintiff was limited to lifting 20 pounds occasionally, 10 pounds frequently, and limited in her ability to push or pull because of problems in her lower extremities. (Tr. 276-78). Dr. Albert opined that Plaintiff was able to sit, stand, and walk approximately six hours in an eight hour workday, but could stoop, kneel or crouch only less than two-thirds of the workday, climb ramps or stairs, balance or crawl less than one-third of the workday, and never could climb ladders, rope or scaffolds. *Id.* Dr. Albert noted that Plaintiff must avoid concentrated exposure to extreme cold and heat, wetness, humidity, and hazards

such as machinery and heights.  *Id.*

The Commissioner further relies on the opinion of Paul T. Heban, M.D., an internist who reviewed the file in March 2004.  (Tr 285-90).  Dr. Heban diagnosed Plaintiff with angina, status/post anterior myocardial infarction, and other impairments of near syncope due to arrthymia, COPD, and status/post ORIF with fusion of the left ankle. Dr. Heban opined that Plaintiff was limited to sedentary work. Plaintiff only occasionally could lift 10 pounds and frequently could lift less than 10 pounds.  *Id.*  Dr. Heban concluded that Plaintiff could stand or walk at least two hours in an eight hour day and could sit approximately six hours in an eight hour day.  *Id.*   Plaintiff could stoop, kneel or crouch less than two-thirds of the workday; climb ramps and stairs, balance and crawl less than one-third of the workday; and never climb ladders, ropes and scaffolds.  *Id.*  Dr. Heban noted that Plaintiff must avoid concentrated exposure to extreme cold and heat; avoid even moderate exposure to fumes, odors, dusts and gases; and avoid all exposure to hazards such as machinery and heights.  *Id.*

## III.    "DISABILITY" DEFINED AND ADMINISTRATIVE REVIEW

A. "Disability" and the Sequential Evaluation Procedure

The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that

is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70.  A

DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a

disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see also Wyatt v.

Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *Hephner v.

Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a

five-step sequential evaluation of the evidence.  (*See* Tr. 67-82); *see also* 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates

the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully

considered, the evaluation answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.   Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or
    equal the criteria of an impairment set forth in the Commissioner's Listing
    of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant
    perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and
    residual functional capacity, can the claimant perform other work available
    in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

B.  ALJ Padilla's Decision

In the present case, it is undisputed that Plaintiff has not engaged in substantial gainful activity during the period of claimed disability. The ALJ found at Step 2 that Plaintiff had the severe impairments of coronary artery disease status/post PCTA and stenting, and breathing problems (chronic bronchitis/obstructive pulmonary disease) with continued cigarette smoking against medical advice. (Tr. 80, Finding 3). The ALJ determined at Step 3 that the severity of these impairments does not meet or equal one in the Listings. *Id.*

The parties' contentions in this case focus upon the ALJ's evaluation of the medical source opinions. That evaluation occurred mainly at Step 4 of the sequential evaluation, where the ALJ also assessed Plaintiff's Residual Functional Capacity as follows:

> The claimant retains the functional capacity to perform light work, as such work is defined for Social Security purposes, if she is allowed to alternate positions as needed, is restricted from climbing ladders, and from work at unprotected heights, is limited to occasional stair climbing, balancing, and crawling, is limited to frequent stooping, kneeling, and crouching, is limited to occasional use of foot controls, is limited to work in a controlled temperature, clean air environment (no heavy concentration of dust, fumes, oils, or gases), is restricted from exposure to moving machinery, or wet/humid areas, and is limited to low stress jobs (but can deal with the public).

(Tr. 81, Finding 4). The ALJ's assessment of Plaintiff's Residual Functional Capacity, along with the ALJ's findings throughout his sequential evaluation, led him to conclude that Plaintiff was not under a disability and thus not eligible to receive SSI or DIB.

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings, and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F.3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance . . .'" *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F.3d at 746. This occurs, for example, when the ALJ

has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

## V.    DISCUSSION

### A.    <u>The Parties' Contentions</u>

Plaintiff raises only one argument before this Court, as follows:

> ALJ Padilla erred in failing to give controlling weight to the opinion of plaintiff's treating physician[,] Dr. Dahdah.

(Doc. #8 at 9).  She first contends that Dr. DahDah's long-standing treatment relationship with her, the consistency of his opinion with other record evidence (particularly the opinion of Dr. Wagshul), and the general acceptance of the medical tests and techniques he used to diagnose and treat her, all warrant crediting his opinion as that of a treating source, entitled to controlling weight.  (*Id.* at 9-13).  Acknowledging that the ALJ "gave a number of reasons as to why he discredited the opinion of Dr. DahDah and afforded it only minimal weight," Plaintiff nonetheless urges that the ALJ did not give "a 'good reason'."  (*Id.* at 13).  She suggests that the ALJ inaccurately characterized Dr. Dahdah's opinion as "not represent[ing her] functional ability . . . during a period of stability" (*but see* n.1, *infra*),  and also assigned undue significance to her failure to completely cease smoking.  (*Id.* at 13-14).  Moreover, she criticizes the ALJ's "ludicrous accusation" that the signature on Plaintiff's RFC assessment "purportedly signed by Dr. Dahdah . . . is not his."  (*Id.* at 14; *see* Tr. 73).  Plaintiff also emphasizes Dr. Dahdah's status as "the only

board[-]certified cardiologist to examine or treat" her for purposes of the disability determination before this Court. (*Id.* at 16). For all of these reasons, Plaintiff argues that the ALJ's decision should be reversed, or at least remanded.

The Commissioner counters that substantial evidence – particularly, the opinions of Drs. Albert and Heban – supports the ALJ's non-disability finding. (Doc. #10, at 1, 8-9). He contends that the ALJ reasonably found that Dr. Dahdah's opinion regarding Plaintiff's functional limitations "was inconsistent with the objective medical evidence in the record," including the results of some of Dr. Dahdah's own testing. (*Id.* at 12). The Commissioner further suggests that the ALJ properly rejected "the extreme limitations set forth by Dr. Wagshul," based both on that doctor's "sparsity of treatment" and Plaintiff's "poor and inconsistent effort" on the tests he administered (*id.* at 13-14), and that such rejection leaves the record devoid of other medical evidence consistent with Dr. Dahdah's opinions. Additionally, he argues that Plaintiff misconstrues one of the ALJ's comments (which in fact was directed toward another medical provider)[2] as a effort to discredit Dr. Dahdah. (*Id.* at 12). According to the Commissioner, the ALJ's findings thus were amply supported and appropriate.

## B.     Medical Source Opinions

Resolving the parties' contentions begins with the standards used by ALJs to

---

[2]Because careful review of the ALJ's decision confirms that his "acute period" statement that Plaintiff found objectionable (*see* Doc. #8 at 13) did not involve Dr. Dahdah at all (*see* Tr. 76; *see also* Tr. 69), and because that issue has no bearing on this Recommendation, the Court has not expounded upon that element of Plaintiff's argument in its Analysis, *infra.*

weigh the various medical source opinions in the administrative record. The treating physician rule, when applicable, requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor, an examining physician who saw a claimant only once, or a medical advisor who testified before the ALJ. *Wilson*, 378 F.3d at 544; *see Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. § 404.1527(d)(2), (e), (f). A treating physician's opinion is given controlling weight, however, only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Wilson*, 378 F.3d at 544; *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. § 404.1527(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)).

In general, the opinions of examining medical sources are given more weight than those of non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(1). However, the opinions of non-examining state agency medical consultants have some value, and under some circumstances, can be given significant weight. This occurs because the

Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, the opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as those of treating physicians, including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1572(d), (f).

C. <u>Analysis</u>

The ALJ began his discussion of the medical source opinions by explicitly acknowledging the factors to be considered "[i]n deciding whether or not to adopt the treating source's opinion in this situation." (*See* Tr. 77). In doing so, the ALJ identified the correct sources of the legal criteria to be applied. More specificity doubtless would have clarified the particular factors applicable under the treating physician rule and the need for continued weighing under additional factors when the treating physician rule does not apply. *See* 20 C.F.R. §404.1527(d)(2)-(6). Still, it was not an error of law for the ALJ to omit a more specific discussion of the applicable legal criteria since his citations are accurate and since his decision can (and must) be studied further to determine what specific legal criteria he used to evaluate the medical source opinions, and whether substantial evidence supported his factual findings.

The ALJ rejected Dr. Dahdah's opinions as inconsistent with the objective evidence, despite the consistency of his opinions with those of Dr. Wagshul, a physician who began to treat Plaintiff in 1995. The ALJ concluded, however, that Dr. Wagshul

14

should not be considered a treating source, because he saw Plaintiff only twice after a nine-year treatment gap before offering his opinion.

Although Dr. Wagshul did not treat Plaintiff consistently following her initial breathing problems, Plaintiff notes that Dr. Wagshul regularly treated Plaintiff from September 1995 through February 1996 (Tr. 451-75), and resumed treatment and evaluated Plaintiff prior to offering his opinion. As Plaintiff further notes, Dr. Wagshul was able to compare Plaintiff's condition in 1995 and 1996 with her condition in 2005, and determined that her condition had worsened. (Doc. #8 at 11). The issue therefore is not whether Dr. Wagshul is a treating medical source, but rather whether substantial evidence supports the ALJ's findings underlying his decision to deny Dr. Wagshul's opinion controlling weight. The record is deficient, however, in setting forth any reasonable bases for rejecting Dr. Wagshul's opinion aside from the perceived lapse in treatment. (*See* Tr. 74, 77-78). This was error.

Dr. Dahdah's opinion also is consistent with objective medical evidence in the record. (Tr. 342-43). Dr. Dahdah stated that Plaintiff has a history of coronary artery disease, heart attacks, COPD and dysfunctional uterine bleeding. *Id.* He noted that Plaintiff has received multiple coronary angioplasties with stenting, and he relied on her echocardiogram, demonstrating left ventricular dysfunction, and her most recent stress test, demonstrating anterior and apical wall ischemia. *Id.* Dr. Dahdah also relied on Plaintiff's latest pulmonary function test to confirm her COPD diagnosis. *Id.*

Turning to the medical sources upon whom the ALJ relied – Dr. Albert and Dr.

Heban, both reviewing physicians – the ALJ noted that "[t]here is little objective evidence of any functional impairment which completely prevents the claimant from working. She complained of shortness of breath and congestion, and at times was noted to have decreased breath sounds and wheezing." (Tr. 75). The residual functional capacity found by the ALJ is practically identical to that found by Dr. Albert, except that the ALJ additionally found that Plaintiff needed to be able to alternate positions as needed and could perform only low-stress work. (Tr. 81). The ALJ provided no explanation or indication of what regulatory factors led him to accept the opinions of Drs. Heban and Albert over the those of Dr. Dahdah.

Plaintiff further argues, accurately, that Dr. Dahdah is the only board-certified cardiologist in the record. (*See* Doc. #8 at 16). Dr. Albert is a family practitioner (Tr. 274) and Dr. Heban is an internal medicine specialist. (Tr. 284). The ALJ relied on the opinions of the Ohio BDD medical sources without weighing those opinions under any of the requisite regulatory factors, merely stating, "It was also noted by the State Agency reviewing physician that she did not have congestive heart failure, and had normal neurological function." (Tr. 77). This was contrary to the regulatory requirement that ALJs must weigh the opinions of non-treating physicians – here the Ohio BDD reviewers, Drs. Albert and Heban – under the factors of supportability, consistency, specialization, *etc*. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R.§ 404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion"); *see also* 20 C.F.R. § 404.1527(f)(ii)

(factors apply to opinions of state agency consultants); § 404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same). The ALJ makes no mention of which regulatory factor – supportability, consistency, specialization – led him to credit the examining physicians' report. By not doing so in Plaintiff's case, the ALJ failed to apply the correct legal criteria to the Ohio BDD physicians' opinions.

Dr. Albert offered his opinion in November 2003. As Plaintiff points out, subsequent thereto, "nearly 300 pages of medical records were made a part of the record." (Doc. #11 at 2); (*see* Tr. 494-610; 291-474). These records include treatment notes from Dr. Ki Hwan Lee (Tr. 295-301); records from Community Hospital (Tr. 291-94; 307-21; 544-76); records from Dr. Batie (Tr. 302-06); prescription records (Tr. 322-41; 403-11); records and an residual functional capacity assessment from treating physician Dr. Dahdah (Tr. 342-402; 422-46; 577-94); records from Dr. Siraj (Tr. 595-610; 412-21); records and an residual functional capacity assessment from Dr. Wagshul (Tr. 449-74); and records from Magruder Hospital. (Tr. 494-543). (*See* Doc. #11 at 2). Dr. Albert's opinions offered without the benefit of that further medical data therefore are not reasonably probative of Plaintiff's physical abilities after 2003. Because Plaintiff's foregoing challenges to the ALJ's decision are well taken, that decision cannot stand.

The foregoing conclusion renders it unnecessary to address fully Plaintiff's further criticisms of the ALJ's decision. Nevertheless, the Commissioner's complete failure to respond to Plaintiff's argument about the ALJ's apparent suggestion that certain medical

documents presented on Plaintiff's behalf may have been forged (*see* Tr. 73) warrants the observation that unsubstantiated implications to that effect, if relied upon to justify a non-disability determination, undoubtedly could constitute error. (*See also* Doc. #8 at 14-15). Of less persuasive effect but of apparent concern to Plaintiff was the ALJ's comment that Plaintiff "continued to smoke against medical advice over the course of the record, testifying at the hearing that she still smokes." (Tr. 76). Plaintiff correctly notes that her hearing testimony reflects a good faith effort to quit smoking, reducing her daily consumption from three packs to seven individual cigarettes. (Tr. 108). Although legal sources offer less than clear guidance regarding the significance of a claimant's continued smoking on her disability claim, it does appear that an ALJ does not err simply by questioning a claimant about his/her present smoking habits where "some of [the c]laimant's health problems appear to have [been related to] smoking." *See Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 846 (6th Cir. 2004). Moreover, here, as in *Strong*, nothing in the record supports an inference that the ALJ's final decision was influenced by "improper prejudice" toward the claimant based upon her smoking. *See id.*

## VI.     REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*,

501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous

principle of law, failed to consider certain evidence, failed to consider the combined

effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of*

*Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

The record contains a conflict between the opinions of Plaintiff's treating

cardiologist, Dr. Dahdah, and treating pulmonologist, Dr. Wagshul, and those of the

reviewing physicians, Dr. Albert and Dr. Heban, that has not been resolved under the

standards required by the Regulations.  Given this evidentiary conflict, the Court cannot

say that the evidence of Plaintiff's disability is overwhelming or that the evidence of a

disability is strong while contrary evidence is weak.  A judicial award of benefits

therefore is unwarranted.  *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social

Security Administration for further proceedings pursuant to Sentence Four of § 405(g)

due to the ALJ's failure to weigh the medical source opinions of record as required by the

Regulations.  On remand, the Commissioner and the ALJ should be directed to (1) re-

evaluate the medical source opinions under the legal criteria set forth in the

Commissioner's Regulations, Rulings, and as required by case law; (2) explain the

evaluation of the medical sources as required by the Regulations, Rulings, and case law;

and (3) determine anew whether Plaintiff is under a "disability."

Accordingly, the case must be remanded to the Commissioner and the ALJ under

Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report

and Recommendations.

**IT THEREFORE IS RECOMMENDED THAT:**

1.      The Commissioner's non-disability finding be VACATED;

2.      No finding be made as to whether Plaintiff Sabrina Sexton was under a "disability" within the meaning of the Social Security Act during the period of time at issue;

3.      This case be REMANDED to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4.      The case be TERMINATED on the docket of this Court.

February 17, 2009                                      _____s/ Sharon L. Ovington_____
                                                                    Sharon L. Ovington
                                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen (13) days (excluding intervening Saturdays, Sundays and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Am,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981).